# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| JARMOND CURRY, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Case No. 5:17-cv-00424-MTT-CHW |
| Warden ERIC SELLERS, *et al.*, | : |
| Defendants. | : |

## ORDER

On September 6, 2019, nine cases[1] challenging the conditions of confinement at the Special Management Unit ("SMU") at Georgia Diagnostic and Classification Prison ("GDCP") were consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. *See Curry v. Sellers* (5:17-cv-424), Doc. 31. Pursuant to the consolidation order, *Curry v. Sellers* was designated as the lead case, with all other cases designated as member cases. *Id.*

The following thirteen motions are currently pending in this action: Plaintiff Rodriguez's (1) motion for reconsideration of the order vacating an entry of default (*id.*, Doc. 32), (2) motion for joinder, class certification, and appointment of class counsel (*id.*, Doc. 33), (3) motion for a preliminary injunction and temporary restraining order ("TRO") (*id.*, Doc. 34), and (4) motion to amend the complaint (*id.*, Doc. 35); Plaintiff McCoy's (5) motion to amend the complaint (*id.*, Doc. 36); Plaintiff Coleman's (6) motion for appointment of an expert witness (*id.*, Doc. 37) and (7) motion for a physical and mental

---

[1] *Rodriguez v. Chatman* (5:15-cv-2); *McCoy v. Chatman* (5:15-cv-175); *Coleman v. Danforth* (5:15-cv-267); *Brooks v. Bryson* (5:15-cv-276); *Emberson v. Chatman* (5:15-cv-331); *Diaz v. Chatman* (5:15-cv-338); *Ruffin v. McCloud* (5:15-cv-384); *Connelly v. Sellers* (5:17-cv-416); and *Curry v. Sellers* (5:17-cv-424).

1

examination (*id.*, Doc. 38); Plaintiff Brooks's (8) motion to amend the complaint (*id.*, Doc. 39), (9) motion for a "liberty deprivation hearing" (*id.*, Doc. 40), and (10) motion for leave to interview witnesses (*id.*, Doc. 41); Plaintiff Emberson's (11) motion to appoint counsel (*id.*, Doc. 45) and (12) renewed motion to appoint counsel (*id.*, Doc. 51); and Plaintiff Diaz's (13) motion to appoint counsel (*id.*, Doc. 46).

For the reasons set forth below, all the above-listed motions are **DENIED**, except Plaintiff Brooks's motion to amend (*id.*, Doc. 39), which is **GRANTED**.

### A. Motion for Reconsideration

Plaintiff Rodriguez has moved—for the second time—for reconsideration[2] of the order vacating entry of default against Defendant Burnside in *Rodriguez v. Chatman* (5:15-cv-2). *Curry*, Doc. 32. Shortly preceding Plaintiff's motion, Plaintiff Rodriguez's sole claim against Defendant Burnside—a claim for deliberate indifference to serious medical need, in violation of the Eighth Amendment—was severed from *Rodriguez v. Chatman* (5:15-cv-2) and entered in the new case of *Rodriguez v. Powell* (5:17-cv-387). *See Chatman* (5:15-cv-2), Doc. 185. Plaintiff's claim against Defendant Burnside has since been resolved at the trial level[3] and is now awaiting decision on appeal. *Powell* (5:17-cv-387), Docs. 318, 319.

Plaintiff's motion for reconsideration must be denied. Entry of Default against Defendant Burnside was vacated upon good cause shown and because the circumstances were not so "extreme" as to warrant the drastic remedy of judgment by

---

[2] Plaintiff has moved under Rules 59(e), motion to alter or amend a judgment, and 60(a), relief from an order based on a clerical mistake, of the Federal Rules of Civil Procedure. The motion is better interpreted as one for reconsideration.

[3] A jury found that Plaintiff Rodriguez did not have a serious medical need, thus resolving the deliberate-indifference claim against Defendant Burnside. *Rodriguez v. Powell* (5:17-cv-387), Doc. 314.

default. *See Rodriguez v. Chatman* (5:15-cv-2), Doc. 118. On reconsideration pursuant to 28 U.S.C. § 636(b)(1)(A), the order vacating entry of default was found to be not "clearly erroneous or . . . contrary to law." *Id.*, Doc. 183. Since Plaintiff's instant motion for reconsideration offers nothing to contradict that conclusion, focusing instead on an alternative ground on which the original motion for reconsideration was denied,[4] the motion is **DENIED**.

B.  **Motion for Joinder, Class Certification, and Appointment of Class Counsel**

Plaintiff Rodriguez has filed a motion for joinder, class action certification, and appointment of class counsel. *Curry*, Doc. 33. In *Gumm v. Jacobs* (5:15-cv-41), the Court certified a class of all persons who are or in the future will be assigned to either the SMU or the Tier III Program. *Gumm*, Doc. 256 at 28. The Court also approved a class action settlement agreement resolving all claims for injunctive and declaratory relief. *Id*. In light of the class action settlement agreement in *Gumm*, Plaintiff's motion is **DENIED as moot**.

C.  **Motion for Preliminary Injunction and Temporary Restraining Order**

Plaintiff Rodriguez has filed a motion for a preliminary injunction and TRO, requesting that Defendant Powell and "his Agents" be ordered to provide Plaintiff Rodriguez and all other inmates at GDCP with one hour per day of out-of-cell recreation time, as required by "State Regulations, Rules and Policies." *Curry*, Doc. 34. According to Plaintiff, since February 27, 2018, while he was incarcerated in GDCP, he had been denied all out-of-cell recreation, in violation of his due process and Eighth Amendment rights. *Id.* at 4–8, 12–13. Because Plaintiff has since been transferred from GDCP, and

---

[4] Plaintiff's motion focuses solely on a timeliness issue raised as an alternative ground for denying reconsideration. Since the motion is subject to denial based on the lack of clear error in the original order to vacate, it is not necessary to address timeliness.

pursuant to the class action settlement agreement in *Gumm*, his motion for injunctive relief and a TRO is **DENIED as moot**. *See Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007) ("The general rule in our circuit is that a transfer or a release of a prisoner from prison will moot that prisoner's claims for injunctive and declaratory relief."), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011).

### D. <u>Motions to Amend</u>

Plaintiffs Rodriguez, McCoy, and Brooks have filed motions to amend their respective complaints. *Curry*, Docs. 35, 36, 39. Rule 15 of the Federal Rules of Civil Procedure governs when amendment to a pleading is appropriate:

> "A party may amend its pleading once as a matter of course within . . . (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," which should freely be given when justice so requires. *Id.* 15(a)(2). A district court has discretion to deny a proposed amendment "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001).

1. Rodriguez's Motion to Amend

Plaintiff Rodriguez filed a lengthy amended complaint on April 4, 2018, seeking to add eleven defendants. *Curry*, Doc. 35. The motion was filed while the case was stayed pursuant to the Court's March 21, 2017 order. *Chatman* (5:15-cv-2), Doc. 164. This is Plaintiff Rodriguez's fifth—arguably his sixth—attempt to amend his complaint.

4

Rodriguez's first motion to amend was denied for failure to set forth the substance of the proposed amendments. *Id.*, Docs. 23, 26. Rodriguez then filed a second proposed amendment, which was granted only to the extent of adding an Eighth Amendment claim against Defendant Burnside. *Id.*, Docs. 29, 52. Rodriguez's third amended complaint was initially subject to a motion to strike; however, the motion to strike was administratively terminated in light of a pending interlocutory appeal, which was later dismissed. *Id.*, Docs. 75, 77, 84, 112. A fourth amended complaint was itself amended by a subsequently-filed amendment. *Id.*, Docs. 115, 133. Plaintiff Rodriguez's motion for leave to file his third and fourth amended complaints were granted in part and denied in part. *Id.*, Doc. 183. Following the order to sever, only Plaintiff's Fourteenth Amendment Due Process claims against Defendants Bishop, Chatman, Humphrey, Logan, McMillian, and Powell remained in the action. *Id.*, Doc. 185. These claims were consolidated as part of the instant case, *Curry v. Sellers*. *Id.*, Doc. 212.

Plaintiff Rodriguez's latest proposed amendment came little over six months after entry of the order to sever and over three years after the commencement of his action in January 2015. Though the mere passage of time cannot alone serve as the basis for the denial of a motion to amend, *see In re Engle Cases*, 767 F.3d 1082, 1109 (11th Cir. 2014), where proceedings of substance have taken place in the interim, the delay may prejudice the opposing party. In *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Company*, for instance, the Eleventh Circuit upheld the Southern District of Florida's use of discretion in denying the plaintiffs' motion to amend their complaints for undue delay, because extensive proceedings regarding the merits of the claims, such as the denial of a motion to dismiss and certification of judgment on the pleadings for interlocutory review, had

already been conducted. 470 F.3d 1036, 1041–42 (11th Cir. 2006). The court also considered factors such as the absence of good cause for the delay and the prejudice to the defendant if amendment were permitted. *Id.*

Here, Plaintiff Rodriguez has been given ample opportunity over the three years of this litigation to amend his complaint. After four motions to amend, four motions to dismiss,[5] an interlocutory appeal, and orders to sever and consolidate, an amendment adding eleven new defendants, some of whom previously have been dismissed in this action, *see Chatman* (5:15-cv-2), Doc. 52 (dismissing claims against Rodney McCloud), would be prejudicial to the non-moving parties and unduly delay proceedings. *See Fla. Evergreen Foliage*, 470 F.3d at 1041.

Rodriguez attempts to excuse the delay in adding the eleven defendants by arguing that he has since "gained a great deal of knowledge" regarding the extent of the constitutional violations at GDCP and how the proposed defendants, all of whom Rodriguez considers to be "Central Office Officials" in the Georgia Department of Corrections, acted in concert to violate his Eighth and Fourteenth Amendment rights. *Curry*, Doc. 35 at 4. Rodriguez's allegations, however, are largely duplicative of those raised in other filings, *see, e.g.*, *Chatman* (5:15-cv-2), Doc. 133, and do not indicate why he did not seek to add the eleven defendants sooner. Although Rodriguez claims that his motion is based on newfound knowledge, nothing in the motion suggests what that knowledge might be.

Rodriguez also asserts that the amendment should relate back to his original pleading under Rule 15(c), arguing that the proposed defendants were on notice of the

---

[5] *Rodriguez v. Chatman* (5:15-cv-2), Docs. 40, 77, 120, 160.

claims raised by Rodriguez in this litigation some time prior to the filing of the instant motion. *Curry*, Doc. 35 at 4–5. Rule 15(c) states, in pertinent part, that an amendment changing the party relates back to the date of the complaint if, within 90 days after the complaint is filed, the party to be brought in by amendment "received such notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

Rodriguez's argument fails because the relation-back doctrine is not the appropriate means of adding these defendants. First of all, relation back does not apply, because Rodriguez has sought to *add* new defendants, not *change* initially named defendants. Generally, the federal rule is that, absent fair notice, the relation-back doctrine does not apply to an amendment that adds a new party. *Williams v. United States*, 405 F.2d 234, 237–38 (5th Cir. 1968)[6]; *see also Stewart v. Bureaus Inv. Grp., LLC*, 309 F.R.D. 654, 660–61 (M.D. Ala. 2015) (citing cases). *But see Chumney v. U.S. Repeating Arms Co.*, 196 F.R.D. 419, 429 (M.D. Ala. 2000) ("[T]he relevant issue in this case is not whether the amendment seeks to 'add' or 'change' a defendant, but instead whether the amendment corrects a 'mistake' about the identity of the defendant." (citing *Powers v. Graff*, 148 F.3d 1223, 1226–28 (11th Cir. 1998))). This rule is grounded in the unambiguous language of Rule 15(c), which allows relation back when "the amendment *changes* the party or the naming of the party." Fed. R. Civ. P. 15(c)(1)(C) (emphasis added); *see Stewart*, 309 F.R.D. at 661. Supreme Court precedent counsels that the

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Federal Rules of Civil Procedure must be given their plain meaning. *See Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120, 123 (1989). Since Rodriguez has not sought to *change* a party named initially in his earlier pleadings but has instead sought simply to *add* entirely new parties to the suit, relation back does not apply.

Second, Rodriguez's motion does not accord with the purpose of the relation-back doctrine. The relation-back doctrine "permit[s] amended complaints to relate back to original filings *for statute of limitations purposes* when the amended complaint is correcting a mistake about the identity of the defendant." *Powers*, 148 F.3d at 1226 (emphasis added). At this stage in the proceedings, Rodriguez's compliance with the applicable statute of limitations is not at issue; therefore, a *sua sponte* decision as to whether Rodriguez's filings comply with the relevant limitations period is not warranted.

Finally, even if relation back were relevant, Rodriguez has not alleged that his failure to name the eleven defendants was the result of an error concerning their identities. An amendment can relate back to an earlier filing "where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake," but not "where . . . there is a lack of knowledge of the proper party." *Powers*, 148 F.3d at 1226–27 (internal quotation marks omitted) (quoting *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir. 1993)). Rodriguez's vague assertion that he only now seeks to add the defendants because of newly discovered information is neither sufficient nor relevant to the relation-back inquiry. *See id.* In fact, Rodriguez's allegations suggest that he knew or should have known that the defendants would be proper parties to the suit much earlier in the litigation. *See id.* at 1227.

Given the long history of this case, Rodriguez's numerous opportunities to add new parties in prior amendments, and the lack of good cause for failing to add the eleven defendants at an earlier stage of the proceedings, Plaintiff Rodriguez's motion to amend is **DENIED**.

2. McCoy's Motion to Amend

Plaintiff McCoy has moved to amend the complaint to add claims regarding his treatment at Georgia State Prison. *Curry*, Doc. 36. This is McCoy's eighth proposed amendment. *See McCoy v. Chatman* (5:15-cv-175), Docs. 10, 39, 47, 55, 67, 120, 124. In the instant motion to amend, McCoy alleges generally that Georgia State Prison currently has a policy in place that mirrors the Tier III Program at the SMU. *Curry*, Doc. 36 at 5. McCoy claims that he is being held in a "restricted unit," despite the settlement agreement in *Gumm v. Jacobs*. *Id.* at 4. According to McCoy, the prison's "sham" policy has resulted in an inmate being taken to hospital following an incident "involving weapons" and unsecured prisoners. *Id*. McCoy also claims that he has been wrongly placed in Georgia State Prison's "step down" unit, in violation of his due process rights, because he has not been issued with the requisite disciplinary report. *Id*.

The claims raised in McCoy's motion are insufficient to state a claim and must therefore be denied as futile. A proposed amendment may be denied for futility when it fails to state a claim for relief. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740, 742 (11th Cir. 2008) (citing *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 459 F.3d 1249, 1260–61 (11th Cir. 2006)). A complaint fails to state a claim when, after accepting the factual allegations as true, the claim for relief is not plausible on its face. *See Worthy v. City of Phenix City*, 930 F.3d 1206, 1217 (11th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556

9

U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

First, McCoy's claim regarding the hospitalization of an inmate fails to state a claim because one generally cannot sue for the alleged violation of another's rights. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975). Moreover, McCoy's conclusory statement that the incident "placed [him in] danger" does not sufficiently state a claim for failure to protect. *See Marbury v. Warden*, No. 17-12589, 2019 WL 4062675, at *3–6 (11th Cir. Aug. 29, 2019). Second, McCoy's due-process claim is already adequately addressed in this action. In McCoy's first amended complaint, he alleged that he was placed in the SMU arbitrarily and without notice. *McCoy* (5:15-cv-175), Doc. 10. McCoy now complains that he has been denied the same due process of law at Georgia State Prison. Because his current placement in the "step down" program at Georgia State Prison derives from his alleged arbitrary placement in the SMU, an amendment adding the claim would be futile. In other words, McCoy has not alleged a violation of due process at Georgia State Prison separate and distinct from his allegations related to SMU. Accordingly, Plaintiff McCoy's motion to amend is **DENIED as futile**.

3. Brooks's Motion to Amend

Plaintiff Brooks has requested the addition of a claim for monetary damages against Defendants Bryson, Chatman, Jacobs, Logan, McCloud, Powell, and Ward to his existing Eighth Amendment claim concerning "systemic food deprivation and malnutrition in the SMU." *Curry*, Doc. 39 at 1–2, 28, 31. Brooks raised the food-service and malnutrition claim for the first time in his first motion to amend, *see Brooks v. Bryson*

10

(5:15-cv-276), Doc. 15, which was granted. *Id.*, Doc. 30. Brooks now claims that he inadvertently omitted from his amended complaint both the section articulating the requested relief and the section naming Bryson, Chatman, Jacobs, Logan, McCloud, Powell, and Ward as the parties responsible for the alleged violation. *Curry*, Doc. 39 at 1–2. Defendants Bryson, Chatman, Jacobs, Logan, McCloud, Powell, and Ward have already filed an answer to Brooks's food-service and malnutrition claim, *see Brooks* (5:15-cv-276), Doc. 31 at 8–9, and will therefore suffer no prejudice from continuing to defend against the claim for monetary damages. Accordingly, Plaintiff Brooks's motion to amend is **GRANTED**.

### E. Motions for Appointment of Expert and for Physical and Mental Examination

Plaintiff Coleman has moved under Rules 702 and 706 of the Federal Rules of Evidence for the appointment of an expert witness to perform a medical examination of his person. *Curry*, Doc. 37. Specifically, Coleman asks that a court-appointed expert conduct an x-ray and MRI scan and requests that a psychiatrist perform a psychological examination. *Id.* at 1, 4, 5–6. According to Coleman, previous mental examinations have been performed by "unqualified or untrained personnel." *Id.*, Doc. 37 at 5–6. The claims relevant to Coleman's medical needs in this action involve Defendant Dr. Burnside's alleged denial of constitutionally adequate medical care for his shoulder and the "psychological trauma" and other harms suffered from his extended isolation in the SMU. *Coleman v. Danforth* (5:15-cv-267), Docs. 38-1 at 13–14, 22–23; 43 at 8.

Rule 706 of the Federal Rules of Evidence "provides the court with discretionary power to appoint an expert witness either on the court's own motion or the motion of a party." *Steele v. Shah*, 87 F.3d 1266, 1271 (11th Cir. 1996) (citing Fed. R. Evid. 706).

Coleman's *in forma pauperis* status "could provide further reason to appoint an expert to avoid a wholly one-sided presentation of opinions on the issue." *Id.*

It is not apparent from either the record as it stands at this stage of the proceedings or Coleman's motion that appointment of a medical expert is necessary. Coleman's allegations reveal that he was seen by medical professionals at Telfair State Prison, GDCP, and Augusta State Medical Prison. He was examined and treated by those professionals and received at least two x-rays in 2013 and 2014. *Coleman*, Doc. 38-1 at 12–14. Coleman has not alleged that either of the x-rays are defective, only that the physicians' review of those x-rays was constitutionally inadequate. Neither has Coleman clearly set out the reasons for ordering an MRI scan. Therefore, appointment of a neutral expert to perform additional x-rays and other procedures is not warranted. Moreover, the normal discovery process will presumably reveal all medical records relevant to Coleman's claims, including the x-rays.[7] Discovery in this case was reopened on September 6, 2019, and expires on December 5, 2019. *Curry*, Doc. 31.

As for Coleman's assertion that mental evaluations thus far have been performed only by unqualified staff, the claim is conclusory and offers no information as to why an assessment by a psychiatrist, as opposed to, for example, a licensed psychologist or counselor, is necessary. Accordingly, Plaintiff Coleman's motion for appointment of an expert is **DENIED**.

For similar reasons, Coleman's motion for a physical and mental examination under Rule 35 of the Federal Rules of Civil Procedure is denied. *Curry*, Doc. 38. Rule 35 provides that a court "may order a party whose mental or physical condition—including

---

[7] Plaintiff is advised to direct any and all discovery requests to Defendants and appropriate third parties, not the Court.

blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). "In ruling on a Rule 35 motion, the district court must first determine whether the movant has made an adequate showing on the 'in controversy' and 'good cause' requirements." *Brennan v. Thomas*, No. 17-14575, 2019 WL 3231193, at *3 (11th Cir. July 18, 2019) (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964)). "These requirements 'are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant.'" *Id.* (quoting *Schlagenhauf*, 379 U.S. at 118).

Even if Coleman's claims in this case place his physical and mental health in controversy, he has not shown good cause for a court-ordered examination. Coleman has been treated and examined by numerous medical professionals during his time in confinement. In 2014, for example, Plaintiff was treated by a physician at Augusta State Medical Prison, who "reexamined [his] broken clavicular," conducted x-rays, "issued front handcuff profile," prescribed therapy exercise sessions and pain medication, and scheduled a follow-up appointment to discuss the possibility of surgery on a "protruding bone." *Coleman*, Doc. 38-1 at 14. Coleman does not allege that the treatment he received from the physician in Augusta was inadequate. As discussed above, Coleman can seek production of the medical records created by the Augusta physician, as well as all other treating sources, through the discovery process. As to his mental health, Coleman's conclusory allegation that his previous mental evaluations were conducted by unqualified personnel cannot serve as the basis for a court-ordered psychological examination. Accordingly, Plaintiff Coleman's Rule 35 motion for a physical and mental examination is **DENIED**.

## F. Motion for a Hearing

Plaintiff Brooks has moved for a "liberty deprivation hearing" to determine whether he should be transferred from the SMU to a general population facility. *Curry*, Doc. 40. Brooks's motion is properly construed as one for mandatory injunctive relief. Because all claims for injunctive and declaratory relief related to confinement in the SMU are subject to the class action settlement agreement in *Gumm v. Jacobs* (5:15-cv-41), Plaintiff's motion is **DENIED**.

## G. Motions to Appoint Counsel

Plaintiffs Diaz and Emberson have filed separate motions to appoint counsel. *Curry*, Docs. 45, 46, 51. As explained to Plaintiffs upon the denial of their first respective motions to appoint counsel in their pre-consolidation cases, *see Diaz v. Chatman* (5:15-cv-338), Doc. 10; *Emberson v. Chatman* (5:15-cv-331), Doc. 15, the appointment of counsel is a privilege that is justified only by exceptional circumstances not present here. *See Poole v. Lambert*, 819 F.2d 1025, 1028 (11th Cir. 1987). Because the facts, issues, and law relevant to Plaintiffs' cases are neither novel nor complex, Plaintiffs' motions for appointment of counsel are **DENIED**. If it becomes apparent at a later date that counsel should be appointed, the Court will, **on its own motion**, appoint counsel. No future motions to appoint counsel are required.

## H. Motion for Leave to Interview Witnesses in State Custody

Plaintiff Brooks moves to compel the production of five state prisoners to be interviewed by him at a "suitable prison location." *Curry*, Doc. 41. Plaintiff Brooks's motion is denied for three reasons. First, Brooks's *in forma pauperis* status does not relieve him of the obligation to pay for the costs of his own discovery. *See Easley v. Dep't of Corr.*,

14

590 F. App'x 860, 868 (11th Cir. 2014) ("There is no provision in [§ 1915] for the payment by the government of the costs of . . . litigation expenses, and no other statute authorizes courts to commit federal monies for payment of the necessary expenses in a civil suit brought by an indigent litigant." (internal quotation marks omitted) (quoting *Tabron v. Grace*, 6 F.3d 147, 159 (3d Cir. 1993)). Brooks's motion gives no indication that he has made the practical or financial preparations needed to interview or depose five state prisoners.

Second, the discovery that Brooks seeks is particularly burdensome in this case. Brooks asks the Court to order the state to transport and temporarily re-house five incarcerated persons from across the state to a location equipped to accommodate an interview between two or more prisoners. A federal court "must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system." *Newman v. State of Alabama*, 683 F.2d 1312, 1320 (11th Cir. 1982). "[W]here state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities." *Procunier v. Martinez*, 416 U.S. 396, 405 (1974). In the context of discovery in this case, an order directing state authorities to transport prisoners and to allow otherwise prohibited inmate contact would be out of all proportion to the needs of the case, and the burden or expense of the proposed discovery on the state would outweigh its likely benefit. *See* Fed. R. Civ. P. 26(b)(1).

Finally, requests for compulsory discovery orders must include a certification that the movant has in good faith attempted to resolve the underlying discovery dispute without court action. Fed. R. Civ. P. 37(a). Brooks alleges that inter-prisoner correspondence is forbidden. *See Curry*, Doc. 41 at 2. But even accepting this allegation

15

as true, Brooks's filings do not indicate that Brooks attempted to seek an exemption from this rule for purposes of obtaining the requested discovery in this action. Without some showing by Brooks that he previously attempted to confer with Defendants to reach a resolution without court action, Brooks is not entitled to the compulsory discovery order he requests. For these reasons, the motion is **DENIED**.

      **SO ORDERED**, this 26th day of September, 2019.

                                      s/ Marc T. Treadwell
                                      MARC T. TREADWELL, JUDGE
                                      UNITED STATES DISTRICT COURT