IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| COREY LEWIS COLEMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-424 (MTT) |
| WARDEN DANFORTH, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**ORDER**

In November 2019, Plaintiff Corey Lewis Coleman served the Defendants with 99 pages of discovery requests. Doc. 94 at 1. The Defendants moved for an extension of discovery to answer those requests. *Id.* United States Magistrate Judge Charles H. Weigle granted that motion in part and ordered the Defendants to respond to Coleman by March 6, 2020. *Id.* at 1-2.

On March 3, 2020, Defendant Burnside moved for summary judgment on Coleman's deliberate indifference to serious medical needs claims, and the other Defendants moved for partial summary judgment on Coleman's due process claims. Doc. 112. On June 2, 2020, the Magistrate Judge entered a Recommendation that that motion be granted. Doc. 162. Coleman objected, arguing that the Defendants had failed to answer a set of interrogatories during discovery. Doc. 170 at 2.

The Court ordered the Defendants to inform the Court of their efforts to comply with the Magistrate Judge's discovery order. Doc. 178. In response, the Defendants stated that they mailed responses to Coleman on March 4, 2020, but that the responses "were not delivered to Plaintiff after being placed in USPS mail." Doc. 189 at 3. The

Defendants' counsel stated he re-sent the discovery responses to Coleman on August 10, 2020.  *Id.*

Because Coleman had not been provided discovery, the Court allowed him to file a supplemental response to the Defendants' motion for summary judgment.  Doc. 190.  Coleman has now filed that response, and the motion for summary judgment is ripe.

The Magistrate Judge recommended (1) granting Burnside's motion for summary judgment on Coleman's deliberate indifference to serious medical needs claim and (2) granting the other Defendants' motion for partial summary judgment, such that Coleman's recovery will be limited to nominal damages.  Much of the Magistrate Judge's analysis remains relevant, and the Court relies on the portions of that analysis which are unaffected by Coleman's supplemental response.

**A. Deliberate Indifference to Serious Medical Needs**

*1. Facts*

On the deliberate indifference to medical needs claim against Burnside, the Magistrate Judge recounted the facts as follows:

> Plaintiff's deliberate indifference claims against Defendant Dr. Burnside relate to the allegedly inadequate treatment Dr. Burnside provided for Plaintiff's shoulder injury. Plaintiff arrived at the GDCP with a preexisting injury to his clavicle, which initially resulted from "an old football injury" and was further damaged during an assault at Telfair State Prison. (*Curry*, Docs. 112-2, ¶ 22; 114, pp. 70–71). Plaintiff contends that, in October 2013, Dr. Burnside reviewed an x-ray of his shoulder, revealing "about two inches of bone missing" from his clavicle. (*Coleman*, Doc. 10, p. 11; *Curry*, Doc. 114, pp. 64–65). Dr. Burnside referred Plaintiff to an orthopedist at Augusta Medical Prison, who recommended a front handcuff profile and prescribed strengthening exercises and pain medication. (*Coleman*, Doc. 38-1, p. 14; *Curry*, Doc. 114, pp. 68–69). The orthopedist also allegedly suggested elective surgery for Plaintiff's shoulder. (*Curry*, Doc. 114, pp. 68–69). Upon Plaintiff's return to the GDCP, Dr. Burnside refused to allow the front handcuff profile, citing security concerns; advised that strengthening exercises could not be performed "due to lack of equipment"; and issued no

> pain medication. (*Coleman*, Doc. 38-1, pp. 14–15; *Curry*, Doc. 114, p. 62). Plaintiff argues that Dr. Burnside erred in denying him the front handcuff profile and by failing to prescribe "needed surgery" and therapy. (*Coleman*, Doc. 10, p. 11). Plaintiff alleges that, as a result of Dr. Burnside's actions, he suffered permanent damage to his shoulder and severe pain. (*Id.*). He also claims that his mental health suffered as a result of his injury and his confinement in the SMU, and that Dr. Burnside failed to refer him to a mental health specialist. (*Id.*, pp. 10–11, 13; *Curry*, Doc. 114, pp. 62, 74).

Doc. 162 at 3-4. In his newly filed response, Coleman alleges the orthopedist at Augusta State Medical Prison told him he would "eventually need surgery" and "scheduled a follow up appointment within two months to no avail." Doc. 201 at 4 (citing *Coleman*, 5:15-cv-267, Doc. 85-2). However, as the Magistrate Judge noted, Coleman previously testified that the orthopedist suggested elective surgery. Doc. 162 at 3 (citing Doc. 114 at 68-69). Those are the only relevant new allegations.

*2. Analysis*

A prisoner's Eighth Amendment right against cruel and unusual punishment by prison officials includes the right to be free from deliberate indifference to serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish that a prison official acted deliberately indifferent to a serious medical need, in violation of the Eighth Amendment, the plaintiff must show: (1) he had an objectively serious medical need; (2) the official was deliberately indifferent to that need; and (3) the official's deliberate indifference and the plaintiff's injury were causally related. *Hinson v. Bias*, 927 F.3d 1103, 1121 (11th Cir. 2019). Burnside moves for summary judgment only as to the first two elements.

      a. Serious Medical Need

The Magistrate Judge concluded that no reasonable jury could find that the shoulder injury was a serious medical need, reasoning as follows:

To show that a medical need is serious for Eighth Amendment purposes, the plaintiff must show that the need is either "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) (internal quotation marks omitted) (quoting *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009)). "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm.'" *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (second internal quotation omitted) (quoting *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000)).

Plaintiff's shoulder injury does not qualify as a serious medical need. Apart from Plaintiff's subjective reports of shoulder pain, his chronic shoulder condition, diagnosed as a missing section of clavicle from his right shoulder, caused no additional symptoms. Plaintiff was generally described as a poor and reluctant historian and uncooperative by medical providers, and he often refused treatment. (*Curry*, Doc. 112-2, ¶¶ 16, 19, 22, 30–31, 35). During evaluation, Plaintiff exhibited full range of motion in his right arm and was repeatedly able to climb on and off the examination table without difficulty. (*Id.*, ¶¶ 17, 21). Plaintiff was also observed performing strength exercises in his cell using his right arm. On one occasion, nurse Lynda Adair observed Plaintiff "doing arm curls with heavy weighted bags with both arms." (*Id.*, ¶ 25). Nurse Adair also noted that Plaintiff had reported to a prison officer that he had "already done pullups [and] pushups" that day. (*Id.*). Plaintiff confirmed in his deposition that he performed pushups and other exercises both in his cell and during recreation time. (Doc. 114, p. 44). Furthermore, Dr. Burnside remarked that Plaintiff's right shoulder appeared "very, very muscular," "indicating that he was using his arms and his muscle was not atrophied." (Doc. 112- 2, ¶¶ 17, 22).

Moreover, no physician prescribed more than conservative treatment for Plaintiff's shoulder pain. Dr. Burnside, after reviewing Plaintiff's x-rays, only prescribed Motrin. (*Id.*, ¶¶ 17, 19, 21, 27). Orthopedist Dr. Hinson also prescribed Motrin and further prescribed "whatever [physical therapy] for [range of motion and] strengthening is allowed," considering Plaintiff's "high max" security status, as well as a front handcuff profile, again, if allowed. (Doc. 112-4, p. 70). Dr. Hinson also opined that surgical intervention was not an urgent concern. (*Id.*). In addition, Plaintiff's injury predated his incarceration in Tier III by approximately three years. Plaintiff reported that his shoulder issues began as a result of an "old football injury" in 2010. (Docs. 112-4, p. 70; 114, p. 71). X-rays taken in 2012, 2013, and 2014 showed that the missing clavicle likely resulted from "apparent prior surgery," "prior significant trauma and resorption of the distal clavicle." (Docs. 112-2, ¶ 5; 112-4, pp. 135–37). In light of these uncontroverted facts, no reasonable jury could find that Plaintiff's shoulder injury was a serious medical need. Plaintiff's symptoms and diagnostic tests did not indicate to treating physicians that anything other than conservative treatment was necessary. Plaintiff reported and was observed performing weightlifting

exercises using his affected shoulder and he appeared mobile, which suggested to medical professionals that he was not significantly injured. Furthermore, the age of the injury, although not conclusive in and of itself, when considered together with the general lack of treatment in the intervening years, does not suggest a risk of serious harm. Accordingly, given that Plaintiff's chronic shoulder injury presented no substantial risk of serious harm, his injury was not sufficiently serious for Eighth Amendment purposes. *See Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir. 1978) (finding that a three-year-old shoulder injury was not a serious medical need, given inmate's "essentially satisfactory" condition, full range of motion, and lack of treatment for the injury).

Nothing in Coleman's new filings undermines that analysis, and the Court finds it persuasive. Coleman's shoulder injury did not present a serious medical need.

Coleman also argues that a GDC counselor named Whitmore told him he could not receive a mental health evaluation unless he "sign[ed] onto Mental Health caseload." Doc. 201 at 3. It is difficult to see the relevance of that argument to his claims against Burnside. Further, there is no evidence that Coleman had a serious mental health need. The Magistrate Judge found that no reasonable jury could find that Coleman suffered from a serious medical need related to his mental health, and nothing in Coleman's new filings alters that conclusion. Doc. 162 at 8-10; *see generally* Doc. 201.[1] The Court finds as a matter of law that Coleman did not have a serious medical need for purposes of his Eighth Amendment claim.

      b. Deliberate Indifference

The Magistrate Judge also concluded that no reasonable jury could find Burnside acted with deliberate indifference. As the Magistrate Judge noted, "[a] prison official

---

[1] Although his pleadings made passing reference to "serious mental health request / need" and requested an injunction ordering treatment from a psychiatrist, they did not contain sufficient detail to state an Eighth Amendment claim against Burnside based on denial of treatment for mental health issues. *Coleman*, 5:15-cv-267, Docs. 10 at 6, 10-11; 38-1 ¶¶ 45; 51-63; 44 ¶¶ 62, 82, at 29-30; *see also* Doc. 43 at 7-9. In an abundance of caution, however, the Defendants argued there was no evidence that Coleman suffered from a serious mental health need or that Burnside was deliberately indifferent to Coleman's mental health needs, and the Magistrate Judge agreed. Docs. 112-1 at 6-12, 15, 17; 162 at 8-10, 12-13.

acts with deliberate indifference when he (1) has subjective knowledge of a risk of serious harm, (2) and disregards that risk (3) by conduct that is more than mere negligence. Conduct that amounts to more than mere negligence includes grossly inadequate care, a decision to take an easier but less efficacious course of treatment, and medical care that is so cursory as to amount to no treatment at all." Doc. 162 at 10 (citing *Melton v. Abston*, 841 F.3d 1207, 1223 (11th Cir. 2016)). Here, Coleman alleges Burnside should have (i) given him a front handcuff profile, (ii) give him physical therapy, and (iii) prescribed surgery. However, as the Magistrate Judge found, "[t]he parties do not dispute that Plaintiff's front handcuff profile and prescribed strength exercises were denied for security reasons, given Plaintiff's status as a 'high max' inmate." Doc. 162 at 11. Coleman does not dispute that fact in his supplemental response, and the Court concludes that no reasonable jury could find that Burnside's refusal to change his handcuff profile or to allow him strength exercises constitute deliberate indifference.

As to the surgery, Coleman's supplemental response argues, for the first time, that the consulting orthopedist, Dr. Hinson, stated Coleman "would eventually need surgery" for his shoulder. Doc. 201 at 4 (emphasis added). This hearsay statement conflicts with his deposition testimony that Hinson told him that surgery would be "a selective [sic] process or something I can either try and have or just try and strengthen it through range of motion exercises and therapy." Doc. 114 at 69:5-7. More importantly, as the Magistrate Judge noted, Hinson's notes stated that surgical intervention was not urgent. Doc. 112-4 at 70. Viewing the admissible evidence in the light most favorable to Coleman, Burnside prescribed conservative treatment that was not inconsistent with

Hinson's recommendations. Even assuming a conflict between Burnside's regimen and Hinson's recommendation—and the evidence does not support that assumption—a difference of medical opinion or exercise of discretion regarding forms of treatment, without more, is not evidence of deliberate indifference.

Similarly, Burnside was not deliberately indifferent to Coleman's alleged mental health needs. As the Magistrate Judge noted, Burnside responded to Coleman's mental health complaints by referring him to mental health specialists. Doc. 162 at 12-13. Further, Coleman fails to identify any specific conduct by Burnside that constituted deliberate indifference to mental health needs. Coleman's supplemental response does not bolster his threadbare allegations against Burnside regarding mental health claims, and no reasonable jury could find Burnside acted with deliberate indifference to Coleman's expressed mental health needs.

For those reasons, Burnside's motion for summary judgment is **GRANTED**, and the claims against him are **DISMISSED** with prejudice.

**B. Available relief**

The other Defendants move for partial summary judgment, arguing (i) that any claims for injunctive and declaratory relief are barred by the settlement in *Gumm v. Jacobs*, 5:15-cv-41, and (ii) that Coleman has produced no evidence showing he suffered a more than *de minimis* physical injury as a result of his incarceration in the SMU. Doc. 112 at 19-21; *see* 42 U.S.C. § 1997e(e).

First, the *Gumm* settlement clearly bars Coleman's claims for injunctive and declaratory relief. Docs. 256; 256-1 at 25. The settlement contains a release for all declaratory and injunctive release claims asserted in the Third Amended Complaint.

Doc. 256-1 at 25. Those claims include substantive and procedural due process claims relating to assignment and retention in the Special Management Unit ("SMU") at Georgia Diagnostic and Classification Prison ("GDCP") and Eighth Amendment claims relating to conditions of confinement in the SMU. *Gumm*, 5:15-cv-41, Doc. 140 at 77-80. Coleman's claims for declaratory and injunctive relief are clearly within the scope of that release.

Further, as the Magistrate Judge noted, Coleman has been transferred outside the SMU, so his claims for declaratory and injunctive relief are moot. Doc. 162 at 13 (citing *Smith v. Allen*, 502 F.3d 1255, 1267 (11th Cir. 2007)). For those two reasons, the Defendants are entitled to summary judgment on the claims for declaratory and injunctive relief.

The Magistrate Judge also recommended limiting Coleman's monetary recovery to nominal damages because he failed to show a more than *de minimis* physical injury. *Id.* at 14-15. The Magistrate Judge noted that the only asserted injury that even arguably qualifies as more than *de minimis* is Coleman's shoulder injury. *Id.* However, as discussed above, the undisputed evidence shows that surgery was not medically necessary; the Magistrate Judge also pointed to undisputed evidence that Coleman's shoulder appeared muscular, was not atrophied, and had full range of motion. *Id.* at 15. Further, the undisputed evidence shows that Coleman's shoulder injury pre-dated his assignment to the SMU. Coleman testified that it started as "an old football injury" from Macon State Prison, and he believes it was broken during an assault at Telfair State Prison.[2] Doc. 114 at 70:21-72:24.

---

[2] The original complaint brought claims against prison officials at Telfair. Those claims were severed and transferred to the United States District Court for the Southern District of Georgia. Doc. 73 at 2-3.

In his supplemental response, Coleman does not make any new arguments concerning his alleged physical injury.  The only new filing even arguably relevant to that question is a health services request form attached to his supplemental response.  Doc. 201-13.  On that form, dated 13 October 2016, Coleman alleges,

> The harms caused by isolation include suicidal insomnia, cardiovascular and genito-urinary problems, tremulousness, gastro-intestinal problems, deterioration of eyesight, heart palpitations, migraines, appetite loss, weight loss, sudden excessive sweating, back and joint pain, dizziness, hypersensitivity to external stimuli and lethargy, severe and chronic depression, hallucinations, depersonalization, social withdrawal, confusion, apathy, anxiety, rage, nervousness, night terrors, panic attacks, irrational anger, loss of impulse control, paranoia, claustrophobia, concentration deficits, difficulties with memory, and perceptual distortions.

*Id.* at 2.  Coleman's complaint alleged that, *in general*, "Documented physical and physiological harms caused by isolation include suicide, insomnia, cardiovascular and genito-urinary problems, tremulousness, gastro-intestinal problems . . .".  Doc. 38-1 at 22.  However, he never alleged that he specifically suffered from those problems.  To the contrary, this list of symptoms appears almost verbatim in the complaint of Ricky McCoy, another SMU inmate, filed in April 2016.  *McCoy v. Chatman*, 5:15-cv-175, Doc. 55 at 11.[3]  Coleman listed the conditions he alleges he actually suffered from in a different section of the complaint.  *See* Doc. 38-1 at 27.  The Magistrate Judge addressed all conditions from which Coleman actually allegedly suffered and found that none are more than *de minimis* for purposes of the PLRA.  Doc. 162 at 14 (citing Doc. 38-1 at 27).  The Court agrees.

---

Though not relevant to the analysis in this case, it is notable that the court in the severed case found Coleman had had a chronic shoulder condition before his injury at Telfair and rejected, as a matter of law, Coleman's opinion that his shoulder had been broken.  *Coleman v. Danforth*, 3:16-cv-95 (S.D.Ga.), Docs. 159 at 22; 164 at 1-2.

[3] Both complaints appear to have drawn from the third amended complaint in *Peoples v. Fischer et al.*, 1:11-cv-2694 (S.D.N.Y.), filed in March 2013 by lawyers for a New York nonprofit organization.  *Compare Peoples*, Doc. 93 ¶¶ 28-33, 35 *with Coleman*, 5:15-cv-267, Doc. 38-1 ¶¶ 90-96.

Coleman's medical request form, like his complaint, only alleges that additional conditions are *general* effects of prolonged isolation. He does not claim, in the complaint or request form, that he individually suffered those conditions.

In sum, nothing in Coleman's supplemental response or its attachments changes the Magistrate Judge's analysis. The medical request form is the only item in Coleman's new filings that has any relevance to the issue of physical injury. On the form, Coleman never actually alleged he suffered from those specific conditions, only that they were conditions generally associated with prolonged isolation. Further, to the extent the form could be taken as evidence that Coleman individually suffered from conditions not alleged in his complaint, such as loss of eyesight, it is far too late for him to amend his complaint to allege a new basis for compensatory damages. For those reasons the Magistrate Judge's analysis and conclusions remain unchanged, and Coleman has not suffered a more than *de minimis* injury. Accordingly, his recovery is limited to nominal damages.

## CONCLUSION

For the reasons noted above, Burnside's motion for summary judgment (Doc. 112) is **GRANTED**, and Coleman's Eighth Amendment claim against him is **DISMISSED** with prejudice. The other Defendants' motion for partial summary judgment (Doc. 112) is **GRANTED**, and the relief on Coleman's remaining due process claims is limited to nominal damages.

**SO ORDERED**, this 3rd day of December, 2020.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT